IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBINSON ALONZO-DE LA ROSA,<br><br>Defendant. | Criminal Nos. 25-019 (MAJ) |

### SENTENCING MEMORANDUM

**TO THE HONORABLE COURT:**

**COMES NOW** defendant Mr. Robinson Alonzo-De La Rosa ("Mr. Alonzo") through the undersigned counsel, and very respectfully submits this Sentencing Memorandum to assist this Honorable Court in determining an appropriate sentence.

### I. Introduction

Mr. Alonzo is a smart 44-year-old man. He is a citizen of the Dominican Republic who has an admirable entrepreneurial mind. Unfortunately, he is facing a very serious potential Guideline Sentence of imprisonment (46 to 57 months) due to this case being his fourth (4th) conviction, the last three (3) being illegal reentry cases.

Mr. Alonzo entered a *strain plea* in this case considering that the United States' plea offer mirrored the recommended Guideline Sentence mentioned above. He has been detained since January 2, 2025.

Immigration issues have polarized the United States, the Dominican Republic and even Europe. Latin Americans are being deported from the United States in mass. Also, Haitians are being deported in mass from the Dominican Republic. While such campaigns may seem heartless,

1

what is key is respecting the *Due Process of the Law* and each individual as a person when his/her intentions were simply to try to make a better life for themselves.

## II.    Conduct of Conviction

On February 18, 2025, Mr. Alonzo entered a strait pled to the sole *Count* of the *Indictment*. (*See*, D.E. # 7.) In sum, *Count One* charged him with in-or-about January 2, 2025, within the jurisdiction of this Court, being an alien previously removed from the United States subsequent to an aggravated felony conviction, was found in the United States, attempted to enter the United States without obtaining, prior to his re-embarkation at a place outside the United States, the express consent of the Secretary of the Department of Homeland Security to reapply for admission. All in violation of Title 8, United States Code, Sections 1326(a), and (b)(2).

In sum, he was detained on January 2, 2025, along with approximately 21 nautical miles west of Cabo Rojo, Perto Rico, with another forty-three (43) other illegal immigrants. Biometric verification indicated that Mr. Alonzo had a history of both prior immigration and criminal activity.

## III.    Sentencing Guideline Analysis

The *Presentence Investigation Report* at D.E. # 25 states that two (2) enhancements apply to Mr. Alonzo. First, a +4-level enhancement for having been previously deportation after a felony conviction for ani illegal reentry offense pursuant U.S.S.G. §2L1.2(b)(1)(A). Second, a +10-level enhancement for having engaged in criminal conduct, *prior to being ordered departed*, that entailed a felony offense (other than an illegal reentry offense), for which a sentenced of five (5) years or more was imposed, pursuant to U.S.S.G. §2L1.2(b)(2)(A). Subject to a base offense level of 8 and those enhancements his Adjusted Offense Level is 22. Considering a reduction for acceptance or responsibility, his Total Offense Level ("TOL") is 19.

Considering his prior criminal cases, which result in 8 Criminal History Points, his Criminal History Category ("CHC") is IV. Based on the aforementioned, Mr. Alonzo's recommended Sentencing Guidelines range is 46 to 57 months of imprisonment.

### IV.     Today the Recommended Sentence is Unnecessary

In the year 2023, according to data compiled by the United States Sentencing Commission, 19,226 individuals were sentenced for immigration violations at the Federal level in the United States. (*See*, Exh. A, US Sent. Commissions Annual Report for 2023 at pg. 14.) Immigration offenses were most common of Federal offenses, accounting for 30.0 percent of the total sentencing caseload. *Id*. Men accounted for 97.5% of the convictions and their average age was 39 years old. (*See*, Exh. B, US Sentencing Commission's Quick Facts on Immigration at pg. 1.) The great majority of the time, those sentenced are men seeking to provide their families with better living conditions.

That said, according to the Presentence Investigation Report in this case, the cost of maintaining Mr. Alonzo in a Bureau of Prisons Facility for one (1) year is $49,770.00. (See, D.E. # 25 at ¶ 69.) According to the United States Sentencing Commission, the average sentenced of imprisonment imposed in immigration cases in the year 2023 was one (1) year. (*Id*. at pg. 2.)

In this case, were the Court to impose the lower end of the recommended Sentencing Guideline range, to wit, 46 months of imprisonment, Mr. Alonzo's penalty in this case would cost the United States $190,785.00. If it were to impose the upper end of the guidelines, the cost would be $236,379.00.

That said, times have changed in the United States. Not only is immigration a polarized topic like never previously experienced, but the United States is attempting to balance its budget, slashing cost and even federal jobs. Mr. Alonzo offers that incurring such high costs to imprison

him would entail a waste of valuable resources that may be allocated to other important matters or even saved.

Further, his current recommended Sentencing Guidelines range honestly scares him. The upper end is almost five (5) years of imprisonment. And if he were ever to return his new recommended Sentencing Guidelines range would be 57 to 71 months of imprisonment, plus any potential additional time that could be imposed for violating *Supervised Release Conditions*, which could be up to two (2) years of imprisonment, for a total of 95 months of imprisonment. Statutorily the Court could impose even more time of imprisonment.

Mr. Alonzo has understood that reality and offers that he will not return. He will express the same to the Court.

### V.     Section 3553 Factors

Mr. Alonso is smart and has an entrepreneurial mind. Unfortunately, he wished to be an entrepreneur in the United States. He wanted to work either in food trucks or construction. He was born into poverty when is mother was just fifteen (15) years old. His father promptly abandoned Mr. Alonzo and his sister, so he was until age seven (7) by his paternal grandparents.

At age two (2) he contracted polio and became an invalid with a bent left leg. It took two (2) serious operations to allow him to walk reasonably well, assisted by a cane. All this, while in deep poverty. His grandfather was a produced farmer, and his mother was an incredible role model who became a nurse thanks to the help of her employer who saw potential in her. Mr. Alonso began school at around age ten (10) and finished his studies in his late twenties (20s). He has two (2) daughters, one of legal age and the other only three (3) years old.

He is a resilient man. His circumstances and ignorance caused him to make the mistakes of believing that he would be able to reach and stay in the United States. That is a dream that, according to him, died in January of this year and during his current detention at the Metropolitan Detention Center.

### VI. Sentence Requested

Considering the severity of the recommended Sentencing Guidelines range, Mr. Alonzo very respectfully requests a sentence of one (1) year of imprisonment followed by a three (3) year term of *Supervised Release*.

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of the present *Sentencing Memorandum* and sentence Mr. Alonzo to one (1) year of imprisonment followed by a three (3) year term of *Supervised Release*.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send electronic notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 24th day of March, 2025.

**Trebilcock LLC**
Metro Office Park
BDG 11, Suite 105ª
Phone No.  (787) 399-1969

**s/Thomas Trebilcock-Horan**
USDC-PR No. 220514
tt@trebilcockllc.com